This is number 24-12273, Netchoice LLC versus the Attorney General of the State of Florida. Mr. Petroni. Thank you, Your Honor. May it please the Court. The strong background default rule is that states can regulate above, beyond, to the side of, and as long as it's consistent with, federal law. So if the federal government regulates food requirements, states can have additional or different food requirements. If the federal government regulates labels for cigarettes, states can go so far as to ban cigarettes. And where the federal government says that online marketplaces have to collect basic identifying information from certain high-volume sellers, states can say, well, we want that contact information from a few more high-volume sellers. This is a basic conflict preemption case where there is no conflict. Netchoice's entire argument for some kind of essentially field preemption makes no sense where the statute itself says conflicts. Congress used a term that courts know, the executive branch knows, states know, litigants know what this means in the preemption context. Does this all come down to whether or not the federal law sets a floor or a ceiling? Yes. Yes, Your Honor. That's what it comes – so in the vast majority of cases – and no one with a different set of transactions has to register or will be required to register or provide this information, you'd have a tougher case. Well, it depends what you mean by no one in that sentence, Your Honor. If what you're saying is the federal statute says, here's what we're asking for, we're not asking for anything more, well, states maybe could ask for more. But if what you're saying is that the federal government was clear, Congress was clear, that states can't ask for more, that no one can ask for more, then we'd be in a different universe. So that's – and there are many of these – So it doesn't matter to you what the language of the federal law is with regards to the limitation? No, it certainly matters. My point is just that federal law oftentimes will limit itself without limiting state law at the same time. And other times it will limit state law as well. So very easy examples of this, you know, the National Voter Registration Act, Congress specifically said states may not require any additional information. That's very different from saying we, the federal government, are not going to require any additional information. When the federal government limits itself or Congress limits its own reach or the reach of, say, the FTC or the regulating commission, that does not at all tell you that the federal government wants states to somehow be banished from this area. If the federal government wanted states banished from this area, it easily could have done so. It could have said, you know, anything related to these requirements, anything different from these requirements. Congress does that all the time. It knows how to do field preemption, and it didn't do that here. In fact, it specifically used the word conflicts that brings with it, as even the district court here noted, that that term is laden with meaning in the preemption context. It means conflict preemption. It means impossibility or obstacle preemption. Everyone admits there's no impossibility preemption here. You can absolutely comply with both. And, in fact, complying with Georgia's law means you complied with the federal law. And there's no obstacle preemption either. But at the very least, when NetChoice makes that argument, at least they're in the realm of what, you know, conflict preemption is. But what NetChoice's argument really is here is that this is essentially field preemption, that when Congress said conflict, what it really meant was differ. And when it said differ, what it meant was field preemption. I mean, that's their argument is that states can't do anything in this area beyond what the federal government has already done. And that's just not the way that preemption works, and it's not what conflict means. The default background rule is that states can, in fact, regulate outside of beyond federal regulations. So if standard here is abuse of discretion, even on likelihood of success on the merits, why did the district court commit a clear error of judgment, do you think? Well, Your Honor, this court has said many times that an error of law is an abuse of discretion. But we've also said a million times that on preliminary injunction review, substantial likelihood of success on the merits is reviewed for abuse of discretion, and we don't really look at whether the district court got it ultimately right or ultimately wrong. We have cases going both ways on the issue. Well, the underlying question, Your Honor, of whether or not the district court got the legal analysis right, I do think this court reviews that de novo. But that's not always correct. We have cases stretching back to the 60s in which we say the exact opposite of that. I grant you that we have a lot of cases saying exactly what you say, but we have preliminary injunction cases which say it doesn't matter to us whether or not the district judge got the legal issue correctly or incorrectly. It's just whether he abused his discretion in determining likelihood of success on the merits. The Supreme Court has cases going both ways too on the issue. Well, so two basic responses there, Your Honor. I don't know how we would show an abuse of discretion other than showing that the district judge got the law wrong on this. I mean that is what the analysis would be. You could show that every other court in the country to have addressed an issue has come to a different conclusion and that that cuts against the district court's exercise of discretion in this context. Well, there's a few things there, Your Honor. Of course, this was the very first district court that even addressed this particular issue. But also I would say that if what Your Honor is basically looking for is this even a close question, the answer is no, this is not a close question. The statute says conflicts, and the district court read that to mean essentially field preemption. I mean that can't possibly be right. One other district court in the country has ruled against the position you're taking here. Oh, that's true, Your Honor. It's not like the district court went wild here. Well, Your Honor, respectfully, if the only thing that Nat Choice or any litigant has to do to uphold the P.I. on appeal is get one other district court, I mean like that's not. That's not what I'm suggesting. I'm just saying that there's at least one other district court in the country that has seen things the same way as a district court here. That doesn't mean you win or you lose or vice versa. But in both instances, Your Honor, these are clear errors of law. I don't think this court has ever said there's a clear error of law here, but we're going to uphold the preliminary injunction because we don't really care about the clear error of law. It would be one thing if the court said this is a difficult question, it's a close question, maybe we would come to the opposite conclusion, but because of the equities and so on and so forth, we're not going to vacate the preliminary injunction. There are two huge problems with that here. The first being this is not a close question of law. This is a question about preemption where there's conflict preemption, there's no impossibility, and there's absolutely no obstacle. That's the first main problem. The other problem is if the court is looking at this as like, well, if it were close, maybe the equities would tip one way or the other. I mean there's really nothing on the equities other than this might cost Net Choices members some money. I mean that's not nothing, but it's not the most irreparable harm in the world. And in the meantime, a state statute has been enjoined for over a year at this point, and if this court were to continue that, that would be multiple years then through litigation where it's being enjoined on a legal theory that is plainly wrong. So let me ask you a question about the word conflict that's used. If we look at it in its ordinary sense, what would you understand the word to mean in the statute? Yeah, so obviously in the context of this statute, because it's clearly a preemption clause, we'd say it brings with it the meaning that everyone always understands conflict to mean in conflict preemption cases. But even if you were to do what Net Choice is asking you to do, which is ignore that Congress is using a well-known term of art, it still means clash, be it variance, disagree. It does not mean what Net Choice is saying, which is, well, just anything that's different. Let me ask you a question, though, because Judge Jordan alluded to this, which is if, I mean, the way I look at the conflict here is really with respect to the online marketplace shall only be required to count sales, right? That's really the conflict or the tension between the state law and the federal law. I don't see any tension there, Your Honor. Net Choice makes this argument, but there's no tension. I guess I want you to persuade me, but why should that not be considered instead of, normally a federal law is a floor as opposed to a ceiling. Why shouldn't we consider that to be like a ceiling as opposed to a floor? Well, two basic arguments, Your Honor. First of all, as you just said, normally federal law is the floor. That's the default background. That's always what it is. So Net Choice is the one that has to come up with some argument for why this should be something other than a floor. And if Congress wanted it to be something other than that, they could have used a term that would have made that clear, like different from, relates to, et cetera, in the preemption clause. You know, it had a choice between field preemption, conflict preemption, or its own specific kind of preemption. And at times they do use, actually, the language preempted in statutes. Absolutely, Your Honor, but here they used the term conflict. They didn't use the term relate to. They didn't use any of the terms that, as we point out in our brief, Congress knows how to use, uses them all the time. And so there is simply no evidence whatsoever that this is supposed to be some kind of a ceiling as opposed to a floor. In fact, other portions of the law make clear that state attorneys general and other officers can, in fact, enforce their own statutes. So there is no evidence that Congress is trying to impose a ceiling here, and it's a pretty heavy burden that Net Choice has to carry to get to that point. All right. Thank you very much. You've saved your time for rebuttal. Ms. Murphy. Good morning, Your Honors, and may it please the Court, Aaron Murphy on behalf of Net Choice. I just heard counsel begin and end with the idea that there is a strong presumption against preemption here, and I never heard counsel mention in the entire presentation the fact that this is an express preemption case. We have an express preemption clause in this statute, and this Court held in Carson v. Monsanto en banc that when you have an express preemption clause, you determine the scope of preemption by interpreting the scope of that preemption clause, not by importing into the statute background principles that are designed to apply in cases where Congress was silent about whether it wanted to accomplish preemption. So I'd love to— I think— With regard to the operative issue, right? Yes, and I want to be clear about one thing, too, just to set the level set here. We're not arguing for field preemption. That's never been our argument. We are not arguing, and the district court went out of its way to not hold that this is a field preemption provision. We are not arguing that states cannot regulate at all in the realm of online marketplaces. We are relying on the text of two provisions, the express preemption provision and the clarification F3B that's specific to the issue at hand, which is what transactions count. So if I can start with the text of the express preemption provision, it says that states can't have requirements that conflict with the requirements in federal law. And then you go to F3B, and we very clearly have a requirement that is set as a ceiling, not a floor, because it says that online marketplaces shall only be required to count the sales for which they process payment, which is a very sensible restriction. I mean, the state says this doesn't make any real difference and we're making much out of nothing. There's a real reason that it doesn't make any sense for us to try to have to count transactions for which we don't process payment. We don't have visibility into the terms of those transactions. These transactions, people communicate over a direct messaging system or email or whatever it is, decide what they're going to do offline when they're going to meet up somewhere else to exchange money for goods. Our client members are not in the business of monitoring people's direct communications, emails, all of that, to figure out what they plan to do off-site. So this is a really important restriction that actually has a huge impact on our clients because it's not even feasible to comply with what George is asking us to do. But certainly it's asking us to do precisely what Congress said in F3B, that we may not be required to do. Now, if all we had was that statute, that provision that says this is the only thing you're required to do, I think we'd still have a pretty good case at that point for implied conflict preemption. But this isn't an implied conflict preemption case. This is an express preemption case. And we have an express preemption clause that says that states can't have requirements that conflict with federal law requirements. One of his arguments, and it may be to the implied preemption issue, but one of the arguments on the state side is that you could theoretically comply with both statutes, and therefore there's no conflict. So I'll agree with the first part of what you said, which is we've never argued impossibility preemption. Our argument is not that it's impossible to comply with both of these requirements. Our argument is express preemption. And the very fact that this express preemption clause says that requirements preempt requirements ought to tell you that it has to be broader than impossibility preemption because it really doesn't even make sense to think of two requirements as conflicting in the impossibility sense. I mean, it's very hard to come up with a hypothetical where you literally cannot comply with two different requirements. So the fact that Congress created an express preemption clause that explicitly says that federal law requirements preempt state law requirements that conflict with those requirements ought to tell you that conflicts with here means something much more than impossibility preemption. And the normal understanding of that is what it means is federal law is creating ceilings, not floors. In an implied preemption case, you have to kind of assess on your own by trying to infer from what Congress did how comprehensive is it? Was it doing ceilings or floors? When you have an express preemption clause, Congress is telling you we are doing ceilings. That's the point of the express preemption clause. And I think it's really problematic for the state that by their telling, I don't see how this express preemption clause is doing any work in the statute at all. Because if all it's doing is codifying implied conflict preemption principles, those apply by virtue of the supremacy clause. They're implied conflict preemption principles. So they have no explanation for why Congress went out of its way to create a preemption clause that says no state shall have a requirement that conflicts with the requirements of federal law. If all Congress was doing was saying we're ensuring that courts apply the ordinary rule that you can't have impossibility dynamics where you cannot comply with federal and state law at the same time. And I think the other problem is the state acknowledges that obstacle preemption is part of the analysis under implied preemption. But then their argument for why they don't think there's obstacle preemption here is essentially that they think Congress has to explicitly say, not only is this a ceiling for purposes of federal law, it is also a ceiling for purposes of state law. Obstacle preemption is an implied preemption doctrine. If the only way a statute ever evinced an obstacle, intent to have obstacle preemption, is if Congress explicitly said this is not only a ceiling as a matter of federal law, but states may not have any other requirement that goes above it, that's just eliminating even implied obstacle preemption. So what they're really asking you to do is take a statute that has an express preemption clause and interpret that express preemption clause in a way that's narrower than preemption principles would apply if this were an implied preemption case, which gets matters exactly backwards. What the court should be doing is focusing on simply interpreting the text of the statute that Congress gave you that says this is a statute in which we want preemption. And I think, in particular, the fact that you've got that language of requirements versus requirements tells you Congress was setting ceilings, not floors. But I also think this is a particularly easy case for preemption because if you were looking for intent in a provision of the INFORM Act that Congress wanted to make clear that it was setting a ceiling, not a floor, I mean, I don't know how more directly Congress says that than by saying states shall only be required to count a certain subset of transactions. Maybe if you had some other provision where they didn't show you that Congress clearly thought about the question of should we require more and said no, maybe I guess that's a little bit harder case, but this strikes me as a particularly easy case when you look at this provision and there's no way to read F3B other than as Congress saying we thought about whether you should have to count more and we decided no. So it's absolutely a ceiling for purposes of Federal law. But then when you take that in combination with the fact that this is a statute that has an express preemption clause, it's absolutely clear that Congress wanted to preempt requirements that go above and beyond the requirements of this particular statute. How important is the word only? I would be here making the same argument without it, but I think it makes this a very easy case because it does tell you that Congress includes only because Congress expressly thought about the question of counting more and said no, you shall not be required to count more. And I think that's really how the district court approached this. The court said look, I don't even really have to resolve this debate about exactly how broad conflicts with is because once Congress is saying this is the only thing you have to do, under any normal understanding of conflicts with, a state can't come along and say you have to do more. And that's exactly what the only other court to confront this issue, the Northern District of California, recognized and applied the same reasoning in holding California's attempt to do the same thing preempted on the same basis. Can I ask you a question that I'm going to ask the other side, Mr. Petrani as well? And this is sort of sui sponte, but can you address what we should do after the SCOTUS issued the Trump v. CASA case? I mean, is a narrower injunction appropriate in this case in terms of scope? Yeah, we don't have a problem with an injunction that applies only vis-a-vis our members. That's actually all we asked for, and so I'm not sure if the district court was specifically focused on this issue in thinking about the scope of it. So if the court would like to flag that issue, we are happy to have relief vis-a-vis our members. That's who we sued on behalf of, and that's the relief that we sought here. Okay, thank you. I'd like to mention another provision that the state alluded to at the end of their argument, which is the provision, the savings clause in the INFORM Act, which is subsection D6b. I just want to be very clear about how that provision works. So that's a provision that says that saves the power of states to bring actions under state law. But what that provision says is nothing in this subsection may be construed to prohibit states from bringing actions under state law. That language, subsection, which is a couple of times omitted in the state's brief, is actually quite important because the subsection that's at issue there is only subsection D, and subsection D of the INFORM Act is the provision that says that states may enforce the INFORM Act itself. They can bring INFORM Act actions and get remedies under both federal and state law for violations of the federal INFORM Act. And so all Congress was doing in subsection D6b with this savings clause was saying, don't infer from the fact that we said states can enforce the federal INFORM Act that they can't enforce state laws as well. But that doesn't speak to the question of what state laws they can enforce. That question is answered by subsection G, which tells you in much broader language that no state may have a rule of regulation, etc., that conflicts with federal law, that conflicts with the requirements of this section, the entirety of the INFORM Act. So subsection G overrides essentially what Congress was doing in saying, you can bring state law actions to the extent they are not preempted by the express preemption clause here. So I think there's no tension there at all, particularly because, again, we're not making a field preemption argument that there are no requirements that states could have. The important thing in analyzing the text of subsection G, the critical express preemption provision issue here, you have to have a federal law requirement to do the preempting work. So we're not here to argue that Congress, you know, had a completely comprehensive regime such that there is no room for states to do anything else. If there is no requirement that speaks to the issue at all under the INFORM Act, then there may well be a gap that states are able to fill with their own requirements, which the district court recognized at page 12 of its opinion when it said it was not holding that there are no requirements that states could impose here. It was only concluding that they can't have this requirement because Congress specifically spoke to the questions of what transactions need to be counted by online marketplaces. So if you just kind of, you know, if you hypothesize a statute where Congress doesn't include that critical clarification about what sales count, maybe then states can come in and have their own, they're filling a gap, they're addressing something Congress did not. We are not here to argue that there's no room for states to act here where Congress did not, but where Congress unquestionably did act and acted in a way where it made unquestionably clear that it was setting a ceiling, not just a floor. There is no room for states to come in with laws that say, I know Congress said you shall only be required to do X, but we're going to require you to do X plus Y. And I just do want to underscore the problems with doing that, with this obligation they've imposed, which I think speaks to the equities and why this actually is a much more onerous obligation than the state is suggesting, not that it matters because we have irreparable harm just by the virtue of the undisputed fact that this would require us to engage in additional measures that would cost us money to try and comply with the law. But the way this works, again, you know, the only way that we could have any visibility into transactions that are not being, where we're not processing payment. We have members who process payment. When you process payment, you know the terms of the transaction because the parties have to tell you, this much money goes from this account to this account for this, you know, you know everything. If you're not doing that, the only way you're going to have any idea what the parties agreed to is if you monitor their personal communications with each other. And even then, you're not even going to have accurate information necessarily because they may over email say, yeah, we agree to this price for this product that you told me is, you know, an unused product. They get together in person, turns out that product looks like it was used to me. I'm not willing to pay you that price anymore. I may not be able to purchase it at all. If all we were doing is looking at communications that we, you know, really would not ordinarily have any business to be looking at in the first place, we would think that there was a transaction that counted toward that threshold, and we'd be wrong. It wasn't an unused product. We don't know how much was paid for it. We don't even know if there was actually a transaction. So there's really no way to comply with this in any meaningful sense that would actually address the state's asserted interest in finding people who are engaged in retail theft. So I do think that the equity is cut strongly in our favor here, but, you know, far and away the easiest way to resolve this is we'll correct it. Since you're raising the issue, I presume that that difficulty or impossibility was raised when states like Georgia and California were trying to pass these provisions. It's exactly what we've tried to get states to understand, and there's only two states that have enacted something like this, and I don't think that's an accident. Most states have been perfectly happy to keep their laws the way before the INFORM Act. The state laws worked the way the INFORM Act does. This is the sensible restriction that everybody who had approached this had recognized. This is really the only workable way to do this, and only two states have tried to go beyond that, and both of their laws have been held preempted, and we submit absolutely correctly. So we do not think this is a close case either, unless there are any further questions. Thank you. Well, if there's one thing we agree on, it's that this is not a close case. Three quick points, and then I'll get to the main issue here. First, NetChoice has from the beginning misread the statute to make it seem more onerous than it is. It does not require any analysis into anything offline, but we do agree with NetChoice that none of that really matters for the purposes of preemption. Second one, the idea that it would be hard to find requirements that conflict is absurd, honestly. I mean, just off the top of my head, if a state said, you have to destroy contact information you get from users for privacy concerns, that would conflict with the requirements of the federal INFORM Act. So the idea that you can't have conflicting requirements somehow, I don't even understand what that means. But the express preemption provision says conflict. No, this is my point. I understood NetChoice to be arguing that the only way you could have a conflict here is by the state going above and beyond the requirements of the federal act. You can't really have a state requirement that somehow is impossible to comply with while complying with the federal act. Of course there would be requirements like that. But here it's a little more nuanced because the particular provision at issue here, G, has that specific language about counting is only, only means this. So when the state is asking a company to do something more than just count only those things, doesn't that conflict with the federal provision? No, Your Honor. That's 99.99999% of federal state law regulation. In every case of state, federal conflict preemption, that's always what the other side says. They always say we have to do something beyond what the federal government is telling us we have to do. But that's implied preemption, not express preemption. But there are two things there, Your Honor. The first is— Tell me the best case you have. The best case I have for what, Your Honor? I know. Just give me a second. I'll tell you. The best case or authority you have for what the word conflict means in an express preemption provision. In an express preemption provision? Yes, which is what we have here. So we provide, I think, a lot of cases that use the term conflict, contrary, inconsistent. I'll just point to a few. Which is the best one for you, the one that sort of exemplifies your view of what the word conflict means here? Well, the best case I would point to for understanding why you would use implied conflict principles with an express clause, I think, would be the Metro phones case from the Ninth Circuit, where there it used the term inconsistent, not conflict. But it said that's just conflict preemption. So that's what we apply. But also, I mean, Tyson-Hogg, Opus Management, all of these cases have either conflict or some variation on the term, contrary to, inconsistent with. And both courts and the executive branch understand that to mean conflict preemption. But even if you disagree— So you want us to read an express preemption provision, like the one we have here, through the prism of implied preemption principles? Yes, because Congress used that term. Congress didn't just say— Because our Monsanto case says you don't do that. No, no, no. That's not true at all, Your Honor. What that said is we don't apply the presumption against preemption. We just interpret what the clause says. And that was a very different preemption clause. That one used very broad terms like relate to. It was not—that court did not at all say that when Congress says, we want to use—we want conflict preemption here, that somehow you're supposed to ignore what conflict means in this context. And courts do this all the time. In fact, the only argument I have seen from Net Choice on the other side on this is that in some cases they call them like anti-preemption clauses or whatever. But Net Choice has not pointed to a single case anywhere ever where an express preemption clause used a term like conflict, contrary or inconsistent, and a court did anything other than apply implied conflict preemption principles. But even if you disagree with that— Why would you do that? If you have— It shows what the word means. Implied preemption necessarily means that there's no express preemption provision. Why in the world would you sweep up a common law preemption doctrine into an express preemption scenario? Because the Supreme Court and this Court have said on too many occasions to count that when Congress uses a term that is laden with meaning, it brings the soil with it. So if Congress uses a term like conflicts, what it means is conflict preemption. What they are trying to say is that when Congress uses a well-known term in a well-known context, we're supposed to take it to mean something other than that. That's like Congress using the term compelling interest and least restrictive means and then saying, well, don't use the cases that interpret those words. Go look at dictionaries. And I see that my time has expired, but if I could just make one final point on this. Every single argument that Net Choice just made, that my friend just made, is circular. They assume that this should somehow be ceiling setting, and then they say, look, it says only. Thousands of federal statutes say only because they're talking about what federal law requires, what federal regulators can do. That doesn't mean states are limited by that. That doesn't tell you whether it is ceiling setting or floor setting, and they have provided zero evidence that it is the former. Thank you, Your Honor. All right. Thank you both very much. We're going to take a five-minute break and then come back for our last case. All rise.